This matter was initially appealed by plaintiff to the North Carolina Court of Appeals from an Opinion and Award of the Full Commission, filed 12 September 1994. In its 7 November 1995 decision, the Court of Appeals vacated the Full Commission's prior Opinion and Award, finding that it had improperly placed the burden of proving disability on plaintiff, and remanding this matter for specific findings of fact concerning plaintiff's wage-earning capacity.
The Full Commission has reviewed the prior Opinions and Awards based upon the record of the proceedings and the briefs and oral arguments before the Full Commission. Plaintiff has shown good ground to reconsider the evidence. The Full Commission, having reviewed the evidence in its entirety, reverses the prior Opinion and Award and enters the following Opinion and Award.
*************
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing and on Industrial Commission Form 21, Agreement for Compensation for Disability, approved by the Commission on 17 September 1987, as:
STIPULATIONS
1. On 13 August 1987, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On 13 August 1987, an employment relationship existed between plaintiff and defendant-employer.
3. Transportation Insurance Company was the compensation carrier on the risk at that time.
4. Plaintiff's average weekly wage was $405.00, yielding a compensation rate of $270.00.
5. On 13 August 1987, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer.
*************
The Full Commission vacates the findings of fact found by the Deputy Commissioner and finds as follows:
FINDINGS OF FACT
1. Plaintiff is 41 years of age, having a date of birth of 5 October 1955. He has a ninth grade education and has difficulty reading and writing.
2. Prior to his employment with defendant-employer, plaintiff spent the majority of his life engaged in heavy construction work, specifically framing and hanging sheetrock. He had also worked as a service station attendant and as a lineman. Plaintiff had a pre-existing, non-disabling personality disorder and prison record.
3. On 13 August 1987, plaintiff was employed by defendant-employer as a sheetrock worker. His average weekly wage was $405.00. Plaintiff's duties included, in part, hanging sheetrock, installing metal studs and working with scaffolding.
4. On 13 August 1987, plaintiff was disassembling a scaffold next to an uncovered floor opening when the scaffold collapsed. Plaintiff sustained an injury by accident to his back as a result of failing to the ground.
5. Plaintiff was taken to Wake Medical Center for emergency treatment.
6. As a result of his injury by accident, plaintiff was seen and treated by Dr. Lee A. Whitehurst, an orthopaedic surgeon. Dr. Whitehurst performed a multiple-level spinal surgery on plaintiff, including a fusion procedure and installation of Harrington rods and Wisconsin wires to stabilize plaintiff's back at five levels.
7. Following this injury and subsequent surgery, plaintiff underwent a lengthy and painful period of recuperation and rehabilitation.
8. On 11 March 1988, plaintiff reached maximum medical improvement as a result of his injury by accident and was released to return to light duty work by Dr. Whitehurst. No light duty work was offered by plaintiff's employer or by any other employer. Six weeks later, Dr. Whitehurst released plaintiff to return to regular work with limitations including no prolonged bending and stooping or heavy lifting, specifying a 40 pound lifting restriction. No employment within these limitations was offered by defendant-employer or by any other employer.
9. Defendants assigned a vocational rehabilitation consultant to plaintiff's case and plaintiff cooperated with this individual. The consultant, a Mr. Pruette, completed only an initial rehabilitation report and stated, "It is my opinion that an on-the-job training situation is probably going to be necessary to get an employer to give him serious consideration for a job."
10. Defendants identified no employment within plaintiff's limitations. No specific job description was ever presented to or approved by plaintiff's treating physician. No interviews were scheduled by the vocational consultant and no offers of employment were received by the plaintiff. No on-the-job training program was provided. Indeed, no retraining whatsoever was provided.
11. On his own, plaintiff sought employment with multiple employers. His efforts were futile.
12. On his own, plaintiff sought assistance from the State Vocational Rehabilitation Program. He was enrolled in a sheltered workshop program at the Raleigh Vocational Center under the supervision of Mr. William Glenn Watkins.
13. In this program, plaintiff was able to sustain approximately three hours of consistent activity per day before suffering an increase in back and leg pain such that he was unable to continue activity. In Mr. Watkins' opinion, suitable employment is not available for a person with plaintiff's limitations.
14. Plaintiff also attempted to return to Wake Technical Community College to obtain a GED. He was unable to tolerate the sitting in class required because of increased back pain.
15. On his own and without pay or compensation of any kind, plaintiff occasionally helped in his brother-in-law's service station. This work was never performed for pay, was of short duration lasting only two to three hours at a time, and was not regularly performed because of plaintiff's back condition.
16. Defendants had surveillance performed on plaintiff by a private investigator on two occasions. On 26 February 1990, plaintiff was filmed performing activities at the service station from approximately 11:20 a.m. until approximately 1:45 p.m. On 27 February 1990, plaintiff was filmed sitting on the front porch of his home and briefly mowing a lawn later in the day. The date of 27 February 1990 was a Tuesday and a normal working day. Plaintiff was never observed performing any physical activity for a period of time longer than he had been able to sustain in the sheltered workshop at Raleigh Vocational Center.
17. Periods of inactivity were not filmed by the private investigator.
18. Defendants' 15-minute videotape of plaintiff performing various labors is insufficient, standing alone, to constitute competent evidence that plaintiff is employable.
19. Defendants presented no evidence of any specific job plaintiff could get and keep in his present condition, considering his age, limited education, work experience, prison record, chronic back and leg pain, depression and other mental health problems.
20. In addition to Mr. Watkins and Mr. Jerry Pruette, plaintiff was also seen and evaluated by Mr. Sol Richman, a psychologist and stipulated vocational expert. Mr. Richman conducted a number of tests to determine plaintiff's vocational limitations and concluded plaintiff is permanently and totally disabled as a result of his injury by accident on 13 August 1987. In Mr. Richman's opinion, plaintiff cannot return to his previous employment as a sheetrock worker, could not hold a job in the general economy and would not be offered a job by an employer.
21. Mr. Richman was also of the opinion plaintiff needed psychological help and counseling as a result of his admittedly compensable injury by accident on 13 August 1987.
22. Reviewing the record as a whole reveals that plaintiff can bend and twist to some extent, but cannot bend or twist repetitively or for extended periods of time. He can do many physical things at different times, but cannot sustain physical activity for a long period of time.
23. Plaintiff's testimony and that of his witnesses at the hearing of this matter are entirely consistent with the records of Raleigh Vocational Center and testimony of Mr. William G. Watkins concerning the length of time plaintiff is able to sustain physical activity.
24. As a result of his injury by accident, plaintiff has been incapable of earning wages with defendant-employer or in any other employment from 13 August 1987 through the date of the hearing and continuing. He is unable to maintain regular attendance and production in any employment and unable to sustain the duties required for full-time or competitive employment as a result of his pre-existing vocational factors in combination with the effects of his injury by accident and chronic pain resulting therefrom. As a result of plaintiff's injury by accident, he has been unable to return to and sustain any previous employment which he has held and there is no credible evidence that competitive work is available for someone of plaintiff's age, education, background and work experience, having his physical limitations or that plaintiff could obtain suitable employment in an open and competitive market.
25. Plaintiff's condition is permanent.
*************
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. As a result of his injury by accident sustained on 13 August 1987, plaintiff is totally and permanently disabled entitling him to compensation at a rate of $270.00 per week from 13 August 1987 through the present time and continuing throughout his lifetime at the same rate, except subject to a change of condition. N.C.G.S. § 97-29 and § 97-47. Dalton v. AnvilKnitwear, 119 N.C. App. 275, 458 S.E.2d 251 (1995);Franklin v. Broyhill Furniture Industries, 123 N.C. App. 200,472 S.E.2d 382 (1996).
2. As the result of the 13 August 1987, injury by accident, plaintiff is entitled to have defendants pay for all reasonable and necessary medical and psychological treatment resulting from said injury, when bills for the same have been submitted by defendant-carrier to the Industrial Commission and approved by the Commission. N.C.G.S. § 97-25.
3. Defendants are entitled to a credit for benefits previously paid.
*************
Based on the foregoing findings of fact and conclusions of law, the Full Commission modifies the holding of the Deputy Commissioner and enters the following:
AWARD
1. Subject to an attorney's fee hereinafter approved and a credit for compensation previously paid, defendants shall pay plaintiff compensation at the rate of $270.00 per week from 13 August 1987 and thereafter continuing at the same rate throughout his lifetime, subject to a change of medical condition and employment. Amounts due through the present time shall be paid in a lump sum, subject to the attorney's fee approved hereinafter.
2. A reasonable attorney fee in the amount of thirty-three and one/third percent (33 1/3%) of the accrued compensation benefits due under the above award is approved for plaintiff's counsel which shall be deducted from said award and paid directly thereto. Thereafter, counsel for plaintiff shall receive every third check payable to plaintiff pursuant to the above award. Consideration and designation of this attorney fee contemplates that counsel for plaintiff shall continue and is hereby ORDERED to monitor the submission of medical expenses to defendants.
3. To the extent the same are reasonably designed to tend to effect a cure of, provide needed relief from and/or lessen the period of disability associated therewith, defendants shall pay all reasonable and necessary medical and mental health expenses which have been or will be incurred by plaintiff as a result of the injury by accident of 13 August 1987, and resulting permanent pain condition throughout his lifetime when bills for the same are submitted in accordance with Industrial Commission Rules.
4. Defendants shall bear the costs, including as a part thereof, reimbursement to plaintiff's counsel for reasonable expert witness fees to the vocational experts involved, in the amount of $700.00 to Mr. Richman.
 S/ ____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ ________________ GEORGE T. GLENN, II DEPUTY COMMISSIONER
S/ _____________ WILLIAM L. HAIGH DEPUTY COMMISSIONER